**Masonic Fraternity Temple Association v. Annie E. Collins, Adm'x.**

1. PRACTICE—*When Refusal of Court to Instruct Jury to Disregard Certain Counts is Harmless Error.*—If there be one good count to which the evidence is applicable, the error of the court, if any, in refusing to instruct the jury to disregard other counts, is harmless.

2. INSTRUCTIONS—*Whole Law in the Case Need Not be Stated in One Instruction.*—It is never necessary to state the whole law of a case in one instruction. It is sufficient if the instructions taken as a whole present the law applicable to the facts in issue.

3. SAME—*Not Error to Refuse Instructions When Same Principles*

*Are Stated in Others.*—It is not error to refuse an instruction when the same principles contained in it are embraced in others given.

4. APPELLATE COURT PRACTICE—*When Verdict Should Not be Disturbed.*—An appellate court must give great weight to the finding of the jury, and must not disturb it unless it is not sustained by the evidence or unless it is clearly against the weight of the evidence.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed December 3, 1903.

PAM, CALHOUN & GLENNON, attorneys for appellant; ALBERT E. DACY, of counsel.

CHILDS & HUDSON, attorneys for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

This is an action brought by appellee to recover damages for the death of her intestate, caused July 25, 1901, by the alleged negligence of appellant in operating one of its elevators in the Masonic Temple Building.

The deceased was fifty-three years of age. He was in the employ of the Dupont, Hazard & Austin Powder Co. This company, for two years preceding his death, had its offices on the fifteenth floor of such building. He used the elevators in the building at least four times a day in going to and in coming from these offices. On the morning of the day he was killed he took an elevator at the main floor. There were nine or ten other passengers. At the third and fourth floors all but three passengers got off. Those who remained were the deceased, Miss Grace and the boy, Morris Julin. At the tenth floor Miss Flemming, whose place of business was on the thirteenth floor, entered the car. The car stopped at the thirteenth floor. Miss Flemming stepped out. The deceased attempted to follow her, but was caught between the floor of the ascending car and the frame-work of the door on the fourteenth floor, and was instantly killed, his body being cut in two, the separated parts falling to the bottom of the elevator shaft.

The jury found appellant guilty and assessed the damages of appellee at $5,000. Judgment was rendered upon

the verdict. From that judgment this appeal was perfected.

Several of the contentions of appellant may be discussed under the heading that the judgment is manifestly against the weight of the evidence.

There were four eye-witnesses to the accident. Mary Grace, who was in the elevator, says that when it reached the tenth floor the only passengers were the deceased, a boy (Julin) and herself; that there Miss Flemming came in, and deceased called for fifteenth floor; that she "heard no other sound until the elevator stopped to let the young lady off;" that no other floors were called; that she did not hear Miss Flemming or the elevator man say anything between the tenth and the fourteenth floors; that at the tenth floor, or between that and where the young lady got out, the deceased, who was behind the witness, stepped over and stood near the door; that after Miss Flemming passed out the elevator door was open about three feet; that at that time the deceased was about to step out; and that the last she saw of him was when he was caught between the cage and the door, his body being half way out." Miss Flemming says that when she got into the elevator the deceased was standing at the door, or near the door; that between the tenth and eleventh floors the deceased said "Fifteen," and that "when I got off at the thirteenth floor I turned to the right, and when I turned around again Mr. Collins was caught between the floor of the elevator and the door;" that "I called for no floor at all," neither did the elevator man; that when she looked around the door was open to its fullest extent.

George Cassel, the elevator man, says that about the ninth floor the deceased called "Fifteenth;" he was then in the rear of the car; that Miss Flemming came in at the tenth floor and called "Thirteenth," while the car was going up; that he let her out at the thirteenth floor and then closed the door within five inches, when deceased came forward and caught hold of the door and forced it open; that the car was then moving; "he made one rush to get

out and grabbed the door open;" that he knew where Miss Flemming was employed, but he would not have stopped the car unless she had called her number; that after he passed the fourth floor he did not look to see what passengers were left in the car—didn't see deceased at all; that the elevator runs swiftly.

Morris Julin, a boy aged twelve years at the time of the accident, who knew Cassel and who was taken to appellant's office and there interrogated right after the accident, says, that about the ninth floor the deceased called the fifteenth floor, and that Miss Flemming called the thirteenth floor; that when Miss Flemming left the car, the door then being open its full width, Cassel almost shut the door and then started the car; that then deceased "behind me, made a rush for the door; he grabbed it and started to force it —Mr. Cassel had his hand on it—it was somehow or other forced open and he became entangled and was dragged to the fourteenth floor; the elevator was thrown off its guides and he dropped to the bottom of the shaft;" that the car started before deceased rushed forward; that witness stood in the center of the elevator on the left side; that when Miss Flemming passed out the door was open to its full width; that the deceased "rushed clear from the back of the elevator right out of the door," and said nothing as he passed out.

Here is a direct conflict in the evidence as to the acts of the deceased and of the elevator man in the progress of this rapidly-moving tragedy. The jury could not believe Miss Grace and also believe Cassel. They had to reject the one and to credit the other in order to determine where the truth lay. They may well have thought the statement of Cassel that this experienced man, past middle age, who had ridden up and down in these elevators more than two thousand times, after the elevator started had "made a rush to get out and grabbed the door open" and attempted to get out, was incredible. They may have believed that the natural desire of Cassel to shield his employer from financial loss and himself from blame for this calamity had influenced his evidence; and that the boy, who knew Cassel,

and who was interviewed by the manager of appellant within thirty minutes after the accident, who was at the office of its attorneys during the trial until after he had testified, and whose evidence upon the main points agree excellently and verbally well with that of Cassel, had been swayed by such acquaintance and by such environment in his remembrance of what occurred in the very few seconds which included this accident. Be this as it may, whether the evidence sustains the verdict was a question of fact, and therefore peculiarly within the province of the jury. An appellate court must give great weight to the finding of the jury, and must not disturb it unless it is not sustained by the evidence or unless it is clearly against the weight of the evidence. Shevalier v. Seager, 121 Ill. 568; Bradley v. Palmer, 193 Ill. 90.

Appellant says that the first instruction given for appellee, reading as follows—"You are instructed that the proprietor and operator of a public passenger elevator in an office building which he runs for the use of the tenants of the building and their employes and visitors, is a common carrier of passengers, and is subject to the same rules and laws concerning negligence as are applicable to other common carriers of passengers"—is reversible error, because by it the jury were left to speculate as to what duties the law casts upon a common carrier of passengers.

It is true that this instruction, while it states the law correctly so far as it goes, does not set out all the law applicable to the facts of this case. It is never necessary to state the whole law of a case in one instruction. (W. Chi. St. R. R. Co. v. Scanlan, 168 Ill. 34.) It is sufficient if the instructions taken as a whole present the law applicable to the facts in issue. Toluca, etc., Ry. Co. v. Haws, 194 Ill. 92.

An examination of the record shows that by other instructions, tendered by each of the parties hereto, the jury was fully instructed as to the law of negligence so far as it pertains to this case.

The claim of appellant that the court erred in refusing to give two instructions tendered by it, is not well taken. The first reads:

" The jury are instructed that if you believe from the evidence that John L. Collins, deceased, was guilty of any negligence which contributed in any degree to the injury which resulted in his death, then the plaintiff can not recover in this case, and in such case you should find the defendant not guilty."

The instructions are not numbered, and therefore it is difficult to make definite reference to them. The court had already instructed the jury in almost the very words of this refused instruction, and in seven other given instructions its substance is embodied.

The second refused instruction reads:

" The court further instructs the jury that if they believe from the evidence in this case that John L. Collins, deceased, met his death because or on account of an effort on his part to alight from a moving elevator, and if you further believe from the evidence that his effort so to alight was a careless and negligent act, and that such effort either caused or materially contributed to his death, then, and in such case, you should find the defendant not guilty."

The substance of this instruction is fully and clearly set forth in a given instruction found on page 183 of the record, and by many other given instructions the jury was fully informed as to the law applicable to contributory negligence.

It was not error for the court to refuse to direct the jury to find a verdict for the defendant upon the first four counts of the declaration, which allege that the deceased became a passenger to be carried to the thirteenth floor. There were other counts which stated that deceased was to be carried to the fifteenth floor; and still other counts in which it is averred that he " became and was a passenger " without stating his destination. This error, if it be one, is cured by the verdict. If there be one good count, to which the evidence is applicable, the error of the court, if any, in refusing to instruct the jury to disregard other counts, is harmless. Consolidated C. Co. v. Scheiber, 167 Ill. 541; Franklin P. & P. Co. v. Behrens, 181 Ill. 340.

Finding no reversible error in this record, we affirm the judgment of the Circuit Court.